NOT SCHEDULED FOR ORAL ARGUMENT

No. 21-5001

# In the United States Court of Appeals for the District of Columbia Circuit

LISA MARIE MONTGOMERY,
PLAINTIFF-APPELLANT,

V.

JEFFREY A. ROSEN, ET AL.,
DEFENDANTS-APPELLEES.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA, D. CT. NO. 1:20-CV-3261 (HON. RANDOLPH D. MOSS)

## RESPONSE TO EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

BRIAN P. CASEY
ALAN T. SIMPSON
J. BENTON HURST
DAVID WAGNER
Assistant United States Attorneys
Western District of Missouri

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

R. CRAIG LAWRENCE
Assistant United States Attorney
District of Columbia

JOHNNY H. WALKER
Assistant United States Attorney
District of Columbia
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2575
johnny.walker@usdoj.gov

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff Lisa Montgomery once again seeks to delay the implementation of her lawful sentence based on purported deficiencies in the government's scheduling of her execution. A panel of this Court summarily rejected Montgomery's prior scheduling objection, and the en banc court denied rehearing without any member of the Court calling for a vote. *See* Order, *Montgomery v. Rosen*, No. 20-5379 (D.C. Cir. Jan. 5, 2021); Order, *Montgomery*, No. 20-5379 (Jan. 1, 2021).

Montgomery now asserts that the government failed to comply with two state-law scheduling rules purportedly incorporated by the Federal Death Penalty Act (FDPA), which requires a U.S. Marshal to "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). She contends that "[f]our members of this Court recently agreed—in virtually identical circumstances—that a stay pending appeal to consider the legal question presented in this case was warranted." Mot. 1 (citing *In re Fed. Bureau of Prisons' Execution Protocol Cases*, No. 20-5361 (D.C. Cir. Dec. 10, 2020) (en banc) (*Protocol Cases II*) (Wilkins, J., dissenting)). But Montgomery fails to mention the far more salient aspect of that decision: that *five members* of this Court voted to deny emergency relief pending appeal on that "virtually identical" claim, *id.*, and that the two inmates who sought relief there were subsequently executed. Like cases should be treated alike, especially in the capital context. The en banc court's prior refusal to grant emergency relief on this claim should be dispositive here.

Moreover, the en banc result, even if not controlling, was correct. Montgomery relies on a rule of Missouri Supreme Court practice and procedure that mandates the court provide 90 days' notice of an execution and prohibits it from requiring the department of corrections to conduct more than one execution in a month. Mo. S. Ct. R. 30.30(f). But even assuming the FDPA extends beyond the topline method of execution, it incorporates only those procedures that effectuate death—in other words, procedures pertaining to *how* an execution is conducted, not *when*—and thus does not incorporate state scheduling rules. Indeed, four other courts of appeals have all ruled that the FDPA does not incorporate state laws governing ancillary matters like scheduling and witness participation. *See, e.g.*, *United States v. Vialva*, 976 F.3d 458, 461-62 (5th Cir. 2020) (per curiam), *cert. denied*, No. 20-5766 (20A49), 2020 WL 5667626 (U.S. Sept. 24, 2020). At a minimum, as the district court explained, the setting of execution dates in particular was a matter for which courts historically shared responsibility, and there is no indication in the FDPA's text or history that Congress intended to reassign this task to the marshals or confer on the marshals the authority to "supervise" the courts. 18 U.S.C. § 3596(a).

In all events, Montgomery fails to make the equitable showing that is independently necessary to obtain extraordinary relief barring her execution pending appeal. Montgomery will not suffer any irreparable harm from the denial of her claim. She does not challenge her conviction or sentence, and her claim is not necessary to vindicate any cognizable interest. She received 50 days' notice of her execution; filed

her clemency application weeks ago; and has had decades to litigate her claims. She seeks delay for delay's sake. On the other side of the balance, the public has a "powerful and legitimate interest in punishing the guilty," *Calderon v. Thompson*, 523 U.S. 538, 556 (1998) (quotation marks omitted), by "carrying out a sentence of death in a timely manner," *Baze v. Rees*, 553 U.S. 35, 61 (2008) (plurality opinion). This Court should deny the requested relief so that Montgomery's execution may "proceed as planned." *Barr v. Lee*, 140 S. Ct. 2590, 2592 (2020).

## STATEMENT

### A. Factual Background

A few days before Christmas in 2004, Montgomery went to the home of Bobbie Jo Stinnett, who was eight months pregnant at the time. Montgomery attacked Stinnett, cut her baby from her womb with a kitchen knife, and strangled Stinnett to death. *United States v. Montgomery*, 635 F.3d 1074, 1079-80 (8th Cir. 2011). Montgomery then placed the baby in a car seat she had hidden in her trunk, lied to her husband that she had given birth while shopping, and pretended the baby was her own. *Id.* at 1080.

Montgomery admitted her crime, was convicted of kidnapping resulting in death, and was sentenced to death in the Western District of Missouri. *Id.* at 1080, 1085. She exhausted her appellate and post-conviction rights on May 26, 2020. *See Montgomery v. United States*, 565 U.S. 1263 (2012); *Montgomery v. United States*, 140 S. Ct. 2820 (2020).

On October 16, 2020, the Director of the Bureau of Prisons (BOP) designated December 8, 2020, as the date for Montgomery's execution. Dkt. 33, at 170-72; *see* 28

C.F.R. § 26.3(a)(1) (providing that the Director of the BOP shall set an execution date "no sooner than 60 days from the entry of the judgment of death"). Montgomery was thus notified of the designated date 53 days in advance—well in excess of the 20 days' notice required by regulation. 28 C.F.R. § 26.4(a) (effective until Dec. 28, 2020).

**B. The Present Proceedings**

On November 12, Montgomery filed this suit and moved for a preliminary injunction delaying her execution. She argued that permitting the execution to proceed despite the illness of two of her lawyers would interfere with her right to counsel under 18 U.S.C. § 3599. On November 19, the district court granted Montgomery's motion in part, explaining that it would "stay Plaintiff's execution—briefly—to permit [counsel] to recover from their illness and to have a short time to finish their work in supplementing Plaintiff's placeholder petition for a reprieve or commutation of sentence." Dkt. 19, at 21. It presumptively required Plaintiff to file her clemency application by December 24—which she did, *see* Dkt. 46—and enjoined Defendants from executing Montgomery "before December 31, 2020." Dkt. 20.

On November 23, the Director of BOP designated January 12, 2021 as the new date for Montgomery's execution. Dkt. 33, at 173-75.

On December 9, Montgomery filed a supplemental complaint containing two new claims. First, Montgomery alleged that the Director violated 28 C.F.R. § 26.3(a)(1) by designating a new execution date during the pendency of a stay. Second, she alleged that the Director violated the FDPA's requirement that a U.S. Marshal "supervise

implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed," 18 U.S.C. § 3596(a), by failing to comply with Rule 30.30(f) of the Missouri Supreme Court. *See* Dkt. 29; Minute Order (Dec. 11, 2020). That rule provides that "[t]he Court shall set dates of execution after consultation with the director of the department of corrections," and "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered." Mo. S. Ct. R. 30.30(f). Separately, it states that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month." *Id.*

On December 24, the district court granted partial summary judgment on Montgomery's first supplemental claim, concluding that the Director violated § 26.3(a)(1) when he rescheduled Montgomery's execution during the pendency of the stay. Dkt. 47, at 25. The court vacated the Director's designation and granted partial final judgment. *Id.* at 26-27; Dkt. 48. On January 1, 2021, a panel of this Court summarily reversed. Order, *Montgomery*, No. 20-5379 (Jan. 1, 2021). The full court then denied Montgomery's petition for rehearing en banc, with no member of the court calling for a vote. Order, *Montgomery*, No. 20-5379 (Jan. 5, 2021).

Montgomery renewed her motion for partial summary judgment on the FDPA claim in the district court. *See* Dkt. 57. The district court denied her motion. *See* Dkt. 61 (Op.). The court began by explaining that this Court's fractured decision in *In re Federal Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106 (D.C. Cir. 2020) (*Protocol Cases I*),

did not resolve the question before it. Op. at 5-11. It then independently concluded that "the FDPA's reference to 'implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed,' 18 U.S.C. § 3596(a), is best read to include the steps of the administrative process by which the government carries out an execution after a prisoner has exhausted her appeals." Op. at 24-25. But the court concluded that "the setting of an execution date" is not "one of those steps." *Id.* at 25.

The court explained that the "primary responsibility for setting the dates of federal executions has traditionally rested … with the sentencing court," and that "[w]hen Congress drafted the FDPA, it was presumably aware of this historical practice." *Id.* at 27, 29. It observed that "[t]here is no indication that Congress, in assigning the U.S. marshals the task of supervising implementation of executions, intended to reassign the task of setting execution dates from the courts to the U.S. marshals." *Id.* at 29-30. The court found it "highly implausible … to suggest that Congress assigned the U.S. marshals the (constitutionally suspect) task of overseeing the federal courts in the setting of execution dates"; indeed, the court believed that the Marshal would lack the authority to disregard a court order to carry out an execution on a particular date simply "because he determines that the court's order conflicts with a state law." *Id.* at 30.

The court separately rejected Montgomery's contention that, in light of the other two federal executions scheduled for January under the laws of other States, her scheduled execution violates Rule 30.30(f)'s prohibition on requiring the department of

corrections to perform more than one execution per month. *Id.* at 33. The court reasoned that this rule "does not seem to bestow any right or privilege on death row inmates" and applies "only when the prisoner was sentenced in Missouri." *Id.* at 34. The court further noted that, "in any event, Montgomery's execution is the first federal execution scheduled in January." *Id.*

**ARGUMENT**

This Court should deny Montgomery's motion for emergency relief pending appeal. As a threshold matter, contrary to her suggestion (Mot. 5), a "stay" is improper relief here: the district court ruled against her and refused to set aside the execution date; staying that order accordingly would not accord her any relief. Instead, her motion is properly characterized as a request for an injunction pending appeal, which is subject to "stringent requirements." Order at 1, *Protocol Cases II*, No. 20-5361 (Dec. 9, 2020) (per curiam) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)); *see Respect Maine PAC v. McKee*, 562 U.S. 996, 996 (2010) (per curiam). Regardless, under any applicable standard, *see Nken v. Holder*, 556 U.S. 418, 426 (2009), Montgomery's motion fails because she cannot establish a likelihood of success on the merits and the equities overwhelmingly support implementing her lawful sentence as scheduled. This Court previously denied relief to two inmates on a virtually identical claim in the same posture. The same result is dictated here.

## I. MONTGOMERY IS UNLIKELY TO SUCCEED ON THE MERITS

The FDPA requires the Marshal to "supervise implementation of the sentence in the manner prescribed by the law of the State in which the sentence is imposed." 18 U.S.C. § 3596(a). Montgomery argues that the FDPA incorporates Missouri Supreme Court Rule 30.30(f), which provides that the Missouri Supreme "Court shall set dates of execution after consultation with the director of the department of corrections," and that "[a]ny date of execution shall be at least 90 days but not more than 120 days after the date the order setting the date is entered." The rule further states that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month."

Montgomery's argument is meritless. Even assuming the FDPA extends beyond topline methods of execution, it indisputably incorporates only those state procedures governing the "implementation" of a capital sentence. 18 U.S.C. § 3596(a). In other words, the FDPA incorporates those state procedures that govern *how* a sentence is carried out, not *when* it is carried out. It therefore does not incorporate rules governing ancillary matters like scheduling and witness participation, as four other courts of appeals all have ruled. The district court's historical analysis of scheduling in particular, indicating that marshals traditionally exercised neither the authority to set execution dates themselves nor the authority to review or invalidate execution dates set by courts, confirms this conclusion. And as the district court correctly recognized, Rule 30.30(f)'s

prohibition on requiring the department of corrections to perform more than one execution in a month is patently inapplicable on multiple independent grounds.

### A. The FDPA Is Limited to State Rules Governing Topline Method of Execution

The FDPA incorporates only those states procedures that govern the topline choice of method of execution, such as hanging, electrocution, or lethal injection. Three Justices of the Supreme Court have indicated that the government is "very likely to prevail" on this argument. *Barr v. Roane*, 140 S. Ct. 353, 353 (2019) (Alito, J., respecting the denial of stay or vacatur). And although a majority of the panel in *Protocol Cases I* declined to endorse it, Judge Katsas did so in his separate opinion. *See* 955 F.3d 106, 113 (D.C. Cir. 2020). Defendants preserve this argument for further review.

### B. The FDPA Is Limited to State Rules Governing the Effectuation of Death

Even if the FDPA is not strictly limited to methods of execution, the phrase "implementation of the sentence in the manner prescribed by [state] law" in § 3596(a) refers at most to "procedures effectuating death." *Vialva*, 976 F.3d at 461-62 (quotation marks omitted); *accord Peterson v. Barr*, 965 F.3d 549, 554 (7th Cir. 2020), *stay denied*, No. 20A6, 2020 WL 3964236 (U.S. July 14, 2020); *United States v. Mitchell*, 971 F.3d 993, 996-97 (9th Cir. 2020), *stay denied*, No. 20A32, 140 S. Ct. 2624 (U.S. Aug. 25, 2020); *see also LeCroy v. United States*, 975 F.3d 1192, 1198 (11th Cir. 2020), *cert. denied*, No. 20-5767 (20A52), 2020 WL 5640389 (U.S. Sept. 22, 2020). To "implement" a sentence means to carry it out. *See* Implement, Webster's Third New Int'l Dictionary 1134 (3d ed. 1993)

("to carry out: accomplish, fulfill"); Implementation Plan, Black's Law Dictionary 872 (10th ed. 2014) ("An outline of steps needed to accomplish a particular goal."). A procedure thus effectuates death if it governs *how* the execution is conducted, not merely *when* the execution is conducted.

Montgomery claims the plain meaning supports her position (Mot. 7), but she ignores critical context. The FDPA provides that an inmate under sentence of death must be "committed to the custody of the Attorney General" while any appeal is pending. 18 U.S.C. § 3596(a). "When the sentence is to be implemented," the Attorney General must "release" the prisoner to the Marshal, "who shall supervise implementation of the sentence." *Id.* As Judge Katsas has noted, "[t]his language makes clear that the prisoner is transferred to the marshal only '[w]hen the sentence is to be implemented,' and that the 'implementation of the sentence' covers only conduct that follows the transfer. In short, 'implementation' does not include scheduling the execution, but instead presupposes a set time and date." Order at 3, *Protocol Cases II*, No. 20-5361 (Dec. 10, 2020) (Katsas, J., concurring).

Nor does this interpretation leave a "lacuna" in the statutory scheme. Mot. 9 (quoting Op. 19). The statute's specification that the Attorney General will retain custody during direct and collateral review does not imply that his custodial role concludes immediately when review terminates. *See* 18 U.S.C. § 3596(a). Rather, the statute specifies that his custodial role presumptively terminates upon transferring the inmate to the Marshal "[w]hen the sentence is to be implemented." *Id.* Montgomery's

"lacuna" argument simply begs the question of what "implementation" means. And her reading would produce the bizarre consequence that the Marshal is presumptively required to retain custody for the (often lengthy) period during which an inmate might remain on death row following the conclusion of direct and collateral review.

Montgomery also argues that the government's interpretation is "internally inconsistent" because it "would excuse the federal government from following state law concerning" certain "death-effectuation procedures," such as "how and where chemicals used in lethal injections should be obtained." Mot. 10-11. But to the extent a safety rule affects *how* the sentence is carried out under the Marshal's supervision—such as by requiring use of a certain drug cocktail, although the cocktail will necessarily be produced in advance of the execution itself—then it may be incorporated by the FDPA. Scheduling requirements, however, do not govern the process used to effectuate death; they are not part of the "implementation of the sentence" supervised by the Marshal, but rather an antecedent decision concerning "[w]hen the sentence is to be implemented" made by officials other than the Marshal. 18 U.S.C. § 3596(a).

Moreover, contrary to Montgomery's claim (Mot. 14), this Court's decision in *Protocol Cases I* does not dictate a different result or otherwise control the question presented. That case "addressed what constitutes a 'manner' of execution under the FDPA, not what constitutes its 'implementation.'" Order at 3, *Protocol Cases II*, No. 20-5361 (Dec. 10, 2020) (Katsas, J., concurring). Nor did the case involve scheduling; instead, it addressed procedures that "'effectuat[e] the death,'" such as "choice of lethal

substances, dosages, vein-access procedures, and medical-personnel requirements." 955 F.3d at 151 (Tatel, J., dissenting) (alteration in original).

To be sure, Judge Rao's concurring opinion noted that "the term 'implementation' is commonly used to refer to a range of procedures and safeguards," and she cited regulations governing "very minute aspects of executions, including the '[d]ate, time, place, and method.'" *Id.* at 133-34 (alteration in original). But although that discussion provided context for her interpretation of whether the "manner" of execution extends beyond the method of execution, nothing in Judge Rao's opinion reflects an intent to settle the question presented here. Indeed, Judge Rao voted *to deny relief* when this question arose in *Protocol Cases II*. Order at 1, *Protocol Cases II*, No. 20-5361 (Dec. 10, 2020) (per curiam). Regardless, even if Judge Rao's opinion could be read to take a definitive stance on that question despite her subsequent en banc vote, the district court below correctly concluded that any such view would not rest on a "common denominator" of the various opinions in *Protocol Cases I* and thus would not form a binding precedent of this Court. *See* Op. 9 (quoting *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc)). Montgomery addresses the district court's analysis on this point only in a footnote (Mot. 15 n.5), and fails to show that any conclusion Judge Rao drew as to scheduling commanded a majority of the panel. *See* Op. 9-11.

The fact that *Protocol Cases I* did not resolve the current question is confirmed by *Protocol Cases II*, where the stay panel unanimously declined to enter relief based on an analogous state-law 90-day notice provision, refusing to halt two Texas-based

executions—one scheduled with 55 days' notice and the other rescheduled with 21 days' notice. *See* Order, *Protocol Cases II*, No. 20-5361 (Dec. 9, 2020) (per curiam). And when the inmates sought en banc review, a *majority* of the en banc panel denied reconsideration, including Judge Rao. *See* Order at 1, *Protocol Cases II*, No. 20-5361 (Dec. 10, 2020) (per curiam). Moreover, three judges on the en banc panel explicitly concluded that "implementation" does not include the setting of an execution date, and that *Protocol Cases I* does not demand a different result. *See id.* at 3 (Katsas, J., concurring). To reach a different conclusion here than did the en banc majority "in virtually identical circumstances," Mot. 1, would raise the specter of inconsistent and arbitrary treatment of similarly situated death-row inmates by this Court.

The decisions of four circuit courts to address this issue after *Protocol Cases I* are likewise consistent with limiting the FDPA to those state procedures that effectuate death, and none has read *Protocol Cases* to answer the question presented here in Montgomery's favor. In squarely rejecting an inmate's invocation of Texas's 90-day notice provision, the Fifth Circuit explained that the FDPA is "at least limited to procedures effectuating death and excludes pre-execution process requirements such as date-setting and issuing warrants." *Vialva*, 976 F.3d at 462 (addressing Tex. Code Crim. Proc. art. 43.141). As the court explained, "[t]he text of the provision explicitly refers to the 'implementation of the sentence' prior to referencing state law." *Id.* Three other courts of appeals have reached similar conclusions. *See Peterson*, 965 F.3d at 554 (holding that a state law governing execution witnesses falls outside the FDPA's scope); *Mitchell*,

971 F.3d at 996-97 (holding that "procedures that do not effectuate death fall outside the scope of 18 U.S.C. § 3596(a)," which "addresses, at most, state laws that set forth procedures for giving practical effect to a sentence of death"); *LeCroy*, 975 F.3d at 1198 (holding that the FDPA "does not extend to" state provisions regarding attorney attendance at executions). Although Montgomery quibbles with the persuasiveness of these opinions (Mot. 12), she does not deny that a ruling in her favor would create a lopsided circuit split.

The incompatibility of Missouri Supreme Court Rule 30.30(f) with federal executions confirms the error of Montgomery's interpretation. Rule 30.30(f) provides that the "Court shall set dates of execution after consultation with the director of the department of corrections," and that "[t]he department of corrections shall not be required to execute more than one warrant of execution per month." That language establishes certain duties of the Missouri Supreme Court, and it prohibits that court from overburdening the state department of corrections by providing inadequate notice or by mandating multiple executions in rapid succession.

Montgomery does not suggest that the FDPA incorporates Rule 30.30(f) directly, such that the Missouri Supreme Court is responsible for scheduling federal executions. And the rule's framework cannot sensibly be translated to the federal level. The U.S. Supreme Court—the federal equivalent of the Missouri Supreme Court—does not set the dates of federal executions and does not consult with the BOP in scheduling executions. Montgomery implicitly recognizes this problem by picking and choosing

the parts of the Missouri rule she wishes to incorporate. She argues that the 90-day notice provision binds the Marshal, but does not suggest that the rule requires the U.S. Supreme Court, or any other federal court, to schedule executions or consult with the BOP in doing so. But she offers no explanation for why, on her own theory, the FDPA selectively incorporates the state law's rule about *when* the execution will be scheduled, but not the state law's rule about *which officials* will schedule the execution.

In response, Montgomery attacks a straw man, contending that state laws "contemplate that all matters relating to implementation of an execution will be carried out by that state's institutions." Mot. 13 (quoting Op. 4 n.1). But in contrast to the scheduling rules at issue in this case, state laws governing the way the state *executive* effectuates death can easily be translated to the federal level, where the Department of Justice similarly carries out executions. The fact that the FDPA does not account for translation problems of the kind at issue here—which would arise frequently if the FDPA incorporated state laws governing decisions remote from the actual execution, like scheduling—confirms that it incorporates, at most, only those state laws governing the effectuation of death.

### C. At a Minimum, the FDPA Is Limited to State Rules Governing Procedures that the Marshal Supervises

As the district court recognized, even if the FDPA is not strictly limited to procedures pertaining to effectuation of death, Montgomery's claim fails for yet another reason: the Marshal does not "supervise" the scheduling of federal executions. 18

U.S.C. § 3596(a). Montgomery asserts that scheduling "initiates the process" of implementing the sentence of death, Mot. 8, but as the district court explained, the Congress that enacted the FDPA did so against a backdrop in which scheduling *preceded* implementation. In particular, courts traditionally shared responsibility with the Executive for setting execution dates. *See* Op. 26-29. And Montgomery identifies nothing in the FDPA suggesting a congressional intent to assign sole scheduling authority to the marshals or otherwise confer on them the authority to "supervise" execution dates set by the courts. *See id.* at 29-30, 32.

Montgomery appears to misunderstand the district court's reasoning, noting that "[t]he marshal has not historically been responsible for choosing the top-line method of execution, either," and arguing that "the marshal's role in ensuring state law is followed is not limited to those matters over which the marshal has historically exercised discretion." Mot. 16. But the point is that the Marshal must at least have the discretion *to comply with state law*. As to topline method of execution, the Marshal may arrange the execution in accord with state law or, if circumstances make compliance impossible, decline to conduct it. But the district court held that court-ordered scheduling is different: "if a federal court orders a U.S. marshal to carry out an execution on a certain date, the marshal has no authority to ignore that order because he determines that the court's order conflicts with a state law." Op. 30. Montgomery implicitly concedes this point, suggesting that the FDPA should be read to require "federal court orders designating execution dates [to] also follow the incorporated state

laws." Mot. 17. The FDPA, of course, says no such thing—and the fact that she is forced to resort to this atextual proposition drives home the error in her analysis.

### D. Rule 30.30(f)'s Limitation on the Number of Executions Is Inapplicable on its Own Terms

Finally, Rule 30.30(f)'s limitation on the number of executions that the department of corrections can be required to carry out in a particular month is patently inapplicable on multiple additional grounds. Montgomery claims that the scheduling of her execution violated this rule because two other federal executions are also currently scheduled for January 2021. Mot. 13 n.4. But neither of those executions is governed by Missouri law. *See* Op. 34. Moreover, Montgomery's execution is the *first* execution scheduled for January.[1] Rule 30.30(f) limits the number of executions that may be required in a particular month, not the number that may be scheduled. As a result, even assuming Rule 30.30(f) governs all three executions in January, there would be no violation of the rule at the time of Montgomery's execution. Indeed, that would be true even if all three executions were Missouri executions and Montgomery's execution were not the first: after all, no court is "requir[ing]" the Department of Justice to schedule three executions in the month, Mo. S. Ct. R. 30.30(f); the Department is *choosing* to do so.

[1] *See* U.S. Dep't of Justice, *Executions Scheduled for Inmates Convicted of Brutal Murders Many Years Ago* (Nov. 20, 2020), https://www.justice.gov/opa/pr/executions-scheduled-inmates-convicted-brutal-murders-many-years-ago.

## II. THE BALANCE OF EQUITIES WEIGHS STRONGLY AGAINST EQUITABLE RELIEF.

The balance of the equities overwhelmingly militates against Montgomery's request for extraordinary relief. Contrary to Montgomery's suggestion (Mot. 19), she will suffer no meaningful harm from the bare procedural violation she alleges, as the district court correctly held in *Protocol Cases II*. *See* No. 19-mc-145, 2020 WL 7186766, at *7 (D.D.C. Dec. 6, 2020). The government accommodated Montgomery by postponing her execution rather than seeking emergency appellate relief of the district court's original injunction, and she filed the clemency petition that formed the basis for the district court's injunction weeks ago. *See* Dkt. 46 (Dec. 24, 2020) (notice of filing of clemency application). She asserts that the planned execution will "cut [her] life short," Mot. 20, but Rule 30.30(f) is an inter-governmental scheduling provision, not an inmate's right to a temporary reprieve. In short, Montgomery seeks delay for delay's sake.

On the other side of the balance, when a sentence of death has been lawfully imposed, "[b]oth the [government] and the victims of crime have an important interest in the timely enforcement of [that] sentence." *Bucklew v. Precythe*, 139 S. Ct. 1112, 1133 (2019) (quotation marks omitted). And once post-conviction proceedings "have run their course, . . . finality acquires an added moral dimension." *Calderon v. Thompson*, 523 U.S. 538, 556 (1998). As the Supreme Court has recognized, unduly delaying executions

can frustrate the death penalty and undermine its retributive and deterrent functions. *See Bucklew*, 139 S. Ct. at 1134; *id.* at 1144 (Breyer, J., dissenting).

Nor is the harm to the government and the public mitigated in a meaningful way by the fact that the postponement would be for a fixed period. *Cf. Barr v. Hall*, No. 20A102, 2020 WL 6797719 (U.S. Nov. 19, 2020) (vacating brief stay designed to permit additional findings). The 90-day rule would impose months of waiting on top of the 20-day regulatory notice requirement, *see* 28 C.F.R. § 26.4(a), and even minor delays can impose serious psychological harms on the families and communities of the victims—including the family members in this case who are planning to attend and support the execution.[2] In addition, the logistical challenges associated with conducting an execution, which are substantial in any case, are particularly acute here. The government already plans to transport an execution team to Terre Haute for the week of January 11, but there are no further executions scheduled after that week. Moreover, Montgomery is currently housed in a women's prison in Texas and will need to be transported to Terre Haute shortly before the execution. *See* Dkt. 59-1, at 3.

Montgomery has also unreasonably delayed in bringing this challenge, and should not be rewarded for her dilatory conduct. She makes the puzzling assertion that

[2] *See also* Alan Van Zandt, *People Gather in Skidmore to Remember Bobbie Jo Stinnett*, KQ2.com (Dec. 9, 2020), https://www.kq2.com/content/news/People-in-Skidmore-gather-to-remember-Bobbie-Jo-Stinnett-573340761.html (noting candlelight vigil for Montgomery's victim on original execution date).

"[t]his particular [Administrative Procedure Act] claim grounded in the FDPA did not arise until the Director rescheduled Mrs. Montgomery's execution on November 23." Mot. 20. But as Montgomery is well aware, the Director's original scheduling of her execution on October 16, for the date of December 8, did not provide the 90 days' notice purportedly required under Missouri law. *See* Dkt. 33, at 170-72. She could have brought her current claim at that time. Instead, she waited nearly two months, until December 9. *See* Dkt. 29. That egregious delay reflects her transparent gamesmanship and efforts to sandbag the government with last-minute challenges.

It has been over 16 years since Montgomery strangled Bobbie Jo Stinnett to death and kidnapped her premature baby. Montgomery does not challenge her conviction for the kidnapping and murder she committed "in an especially heinous or depraved manner," *Montgomery*, 635 F.3d at 1095-96 (quotation marks omitted), nor does she challenge her sentence of death. This Court should deny the requested relief and permit Montgomery's execution to "proceed as planned." *Lee*, 140 S. Ct. at 2592.

## CONCLUSION

For the reasons stated above, this Court should deny Montgomery's request for extraordinary relief pending appeal.

Respectfully submitted,

TIMOTHY A. GARRISON
United States Attorney
Western District of Missouri

BRIAN P. CASEY
ALAN T. SIMPSON
J. BENTON HURST
DAVID WAGNER
Assistant United States Attorneys
Western District of Missouri

MICHAEL R. SHERWIN
Acting United States Attorney
District of Columbia

R. CRAIG LAWRENCE
Assistant United States Attorney
District of Columbia

*s/ Johnny Walker*
JOHNNY H. WALKER
Assistant United States Attorney
District of Columbia
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2575
johnny.walker@usdoj.gov

## CERTIFICATE OF COMPLIANCE

1. This response complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 5,184 words, excluding the parts of the response exempted by Fed. R. App. P. 32(f).

2. This response complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (a)(6) because it has been prepared in a proportionally spaced 14-point typeface using Microsoft Word for Office 365.

*s/ Johnny Walker*
JOHNNY H. WALKER
Assistant United States Attorney
District of Columbia
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2575
johnny.walker@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 10, 2021, I electronically filed the foregoing response with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/ Johnny Walker*
JOHNNY H. WALKER
Assistant United States Attorney
District of Columbia
555 4th Street, N.W.
Washington, DC 20530
(202) 252-2575
johnny.walker@usdoj.gov